IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE BURKE-DICE & JOHN A. DICE, III,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANIES<br><br>    *Defendant*. | CIVIL ACTION<br>NO. 17-3198 |

**PAPPERT, J.**                                August 15, 2017

**MEMORANDUM**

Plaintiffs Katherine Burke-Dice and John A. Dice, III sued GEICO General Insurance Company[1] in state court seeking a declaratory judgment that they are entitled to uninsured motorist benefits under John's GEICO policy. GEICO removed the case to federal court, filed an Answer and asserted a counterclaim seeking a declaratory judgment that it is not obligated to pay the benefits because the Plaintiffs failed to comply with the policy's notice requirement. Plaintiffs filed a Motion to Remand the case to state court, which the Court now grants.

**I.**

The parties' dispute arises out of a car accident that allegedly occurred on July 4, 2013. (Compl. ¶ 7, ECF No. 1, Ex. A.) Plaintiffs contend they were riding in a taxi when an "unknown/phantom vehicle" cut off the cab, causing Plaintiffs to be "abruptly thrown within the vehicle" and injured. (*Id.* ¶ 7.)

---

[1]  Plaintiffs improperly named "Government Employees Insurance Companies" as the Defendant in this case; the proper Defendant is "GEICO General Insurance Company." *See* (Def.'s Ans., at 1, ECF No. 3).

At the time of the accident, John Dice was insured under a GEICO policy ("the Policy") which provided for $100,000.00/$300,000.00 in uninsured motorist benefits, with stacking for multiple vehicles. (Compl. ¶¶ 6, 10, 31); (Policy, at 1, Compl., Ex. C.)[2] If certain requirements are met, the Policy also provides for spousal benefits, to which Mrs. Burke-Dice contends she is entitled. (Compl. ¶¶ 20, 34–36, 19–20); (Policy, at 12, ¶ 2.) The Policy defines "Uninsured Motor Vehicle" as:

(a) a motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident or loss; or

(b) a motor vehicle whose insurer is or becomes insolvent or denies coverage; or

**(c) a "hit-and-run motor vehicle."**

(Policy, at 13, ¶ 7 (emphasis added).)

Section IV of the Policy further defines "hit-and-run motor vehicle":

1. "Hit-and-Run Motor Vehicle" is a motor vehicle that causes an accident resulting in bodily injury to an insured and whose operator or owner is at fault and cannot be identified, provided the insured or someone on his behalf:

   (a) reports the accident promptly to a police, peace of judicial officer or to the Commissioner of Motor Vehicles;

   (b) **files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.**

(Policy, at 12, ¶ 1 (emphasis added).)

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. § 1701, *et seq.*, defines "Uninsured motor vehicle" as, *inter alia*,

---

[2] Plaintiffs' Complaint is attached as Exhibit A to GEICO's Notice of Removal. (ECF No. 1, Ex. A.) The Policy is attached to Plaintiffs' Complaint as Exhibit C and is thus also contained within GEICO's Notice of Removal. (ECF No. 1, Ex. C, Ex. A.) In citing to the Policy, the Court uses the page numbers located in the bottom left hand corner of the Policy itself.

2

"[a]n unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident." *Id.* § 1702.

Plaintiffs immediately reported the July 4, 2013 accident to Philadelphia police, who completed a report for the incident that same day. (*Id.* ¶ 8); (Compl., Ex. B.) Plaintiffs did not, however, immediately notify GEICO. They contend that in October 2013, through their prior counsel, they informed GEICO of their intention to pursue an uninsured motorist claim. (Compl., at 5.) GEICO acknowledged notice of the claim in an October 21, 2013 letter. (*Id.*); (Compl., Ex. E.) On January 16, 2014, Plaintiffs completed an Application for Benefits. (Compl., Ex. C.) GEICO subsequently denied Plaintiffs' claim because they did not alert the insurer of the accident within 30 days. (Compl. ¶ 23.)

Plaintiffs filed suit in the Philadelphia County Court of Common Pleas on June 16, 2017, seeking a declaration that (a) the Policy's notice requirement is void and unenforceable, (b) they complied with the MVFRL's notice requirement, (c) GEICO was not prejudiced, and (d) they are therefore entitled to uninsured motorist benefits. (Compl. ¶¶ 24–25, 38–48.)

On July 13, 2017, the parties stipulated that the statute of limitations for Plaintiffs to pursue a breach of contract claim for uninsured motorist benefits would be tolled as of that date and that should the court find, pursuant to their declaratory judgment action, that coverage exists under the Policy, Plaintiffs could bring their

subsequent breach of contract claim on the same docket.  *See* (Stipulation, Def.'s Answer, Ex. A, ECF No. 3).

On July 18, 2017, GEICO removed the case to federal court on the basis of diversity jurisdiction.  (ECF No. 1.)  GEICO filed its Answer the following day which included a counterclaim seeking a declaration that, due to Plaintiffs' failure to give the requisite 30 days' notice, GEICO is not obligated to pay the benefits.  (ECF No. 3.)  Plaintiffs filed their Motion to Remand on July 31, 2017, (ECF No. 4), to which GEICO responded on August 4, 2017, (ECF No. 5).

## II.

The Declaratory Judgment Act ("DJA") provides, in part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  Jurisdiction conferred by this act is discretionary and district courts are "under no compulsion to exercise it."  *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000)[3] (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  "[S]uch discretion is founded on considerations of practicality and wise judicial administration."  *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 149 n.25 (3d Cir. 2014) (internal quotations and citation omitted).  "The central question is whether the controversy may 'better be settled' in the state court."  *United States v. Pennsylvania Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991).

---

[3] Though not implicated here, the Third Circuit Court of Appeals has held that district courts do not have the same open-ended discretion to decline jurisdiction over declaratory judgment actions when the issues include federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity or the inadequacy of the state proceeding.  *See Reifer*, 751 F.3d at 140 n.12; *Summy*, 234 F.3d at 134.

4

The Third Circuit has articulated over time general factors district courts must consider when deciding whether to exercise jurisdiction, such as whether a declaration "will resolve the uncertainty of obligation which gave rise to the controversy; the convenience of the parties; the public interest in settlement of the uncertainty of obligation; and the availability and relative convenience of other remedies." *Pennsylvania Dep't of Envtl. Res.*, 923 F.2d at 1075 (citations omitted). The Third Circuit has also outlined three additional factors district courts should consider in determining whether to exercise jurisdiction where the subject of the declaratory judgment action involves an insurance coverage issue: (1) a general policy of restraint when the same issues are pending in state court; (2) an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and (3) avoidance of duplicative litigation. *Summy*, 234 F.3d at 134.

In *Summy*, in which parallel proceedings were pending in state court, the Third Circuit emphasized that the state's interest in determining issues of state law weighs against exercising jurisdiction in declaratory judgment actions, particularly when the state law involved is close or unsettled. *See id.* at 135 ("In order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters."). "[D]istrict courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it. This is especially important in insurance coverage cases." *Id.* at 135. "[I]t is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled

5

questions of state law. . . . Such matters should proceed in normal fashion through the state court system." *Id.* (citing *Mitcheson v. Harris*, 955 F.2d 235, 240 (4th Cir. 1992); *Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 225 n.7 (3d Cir. 1999)). "Finally, *Summy* found that district courts should weigh a party's 'vigorous objection' to the district court's assumption of jurisdiction." *Reifer*, 751 F.3d at 141 (quoting *Summy*, 234 F.3d at 136).

In *Reifer*, the Third Circuit further clarified the bounds of a district court's discretion in actions involving insurance coverage issues where, as here, there are no parallel proceedings pending in state court dealing with the same issues. 751 F.3d at 144–47. The Court of Appeals held that the absence of pending parallel state court proceedings "militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise" and "is but one factor for a district court to consider." *Id.* at 144. "In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.*

The Third Circuit then combined elements of several tests to articulate a more uniform set of factors that district courts must consider in exercising their discretion:

> Thus, when determining whether to exercise DJA jurisdiction, in addition to consulting the *Brillhart* factors,[4] a district court should guide its exercise of sound and reasoned discretion by giving meaningful consideration to the following factors to the extent they are relevant:
>
> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;

---

[4] *Brillhart* pertains to circumstances where there is a pending parallel state proceeding and is thus inapplicable here. *See* 316 U.S. at 495.

6

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

These factors are non-exhaustive, and there will be situations in which district courts must consult and address other relevant case law or considerations. For example, in insurance cases, (and to the extent *Summy* applies elsewhere) *Summy*'s additional guidance should also be considered.

*Id.* at 146–47.

The *Reifer* court noted a trend of district courts declining to exercise jurisdiction in DJA cases solely because they were limited to pure questions of state law. *Id.* at 147. The Court of Appeals disavowed this practice and stated that wholesale dismissal of such cases is not a sound or reasoned exercise of discretion. *Id.* It continued: "This is especially true where [f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." *Id.* (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982)). The court, however, reaffirmed the principles that "[w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction" and that, especially in insurance coverage cases,

7

district courts must give "serious consideration" to the fact that they "are limited to predicting—rather than establishing—state law." *Id.* (quoting *Summy*, 234 F.3d at 133–36).

In sum, a district court may not decline jurisdiction "for the sake of comity" merely because an action is limited to an issue of state law; rather, it should more closely examine the crux of the state legal issue and the status of the relevant law to determine whether this consideration, among several others, favors or disfavors exercising jurisdiction. *See id.* at 148–49 ("Among other reasons, the District Court declined jurisdiction for the sake of comity. It noted the importance of respecting the ability of the Pennsylvania court system to enforce its own judgments decided by its own Courts of Common Pleas. We would have preferred the District Court to squarely address the alleged novelty of Reifer's state law claims, an argument she raised below." (internal quotations and citations omitted)).

### III.

#### A.

The Court first weighs the *Reifer* factors, beginning with the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy. *Reifer*, 741 F.3d at 146. Here, though the case is technically currently limited to Plaintiffs' declaratory judgment claim and GEICO's declaratory counterclaim,[5] the merits of these claims are intertwined with the merits of any potential breach of contract claim, over which the Court could likewise exercise jurisdiction. *See Vanderhoff v. Harleysville Ins. Co.*, 78 A.3d 1060, 1065–65 (Pa. 2013) ("*Vanderhoff II*") ("[W]here an insurance company seeks to be relieved of its obligations

---

[5] *See supra* Part I at 4; *see also (*Stipulation, Def.'s Answer, Ex. A).

8

under a liability insurance policy on the ground of late notice, [it must] prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position."). Thus, the Court's decision on the declaratory actions would resolve the underlying uncertainty of obligations. However, this alone "is insufficient to warrant exercising jurisdiction in this case," and since a state court decision would likewise definitively resolve the issue, this factor is neutral. *See Allstate Ins. Co. v. Antoine*, No. 11-5830, 2012 WL 707069, at *3 (E.D. Pa. Mar. 6, 2012); *Hartford Cas. Ins. Co. v. American Recycling Systems, Inc.*, No. 09-3355, 2010 WL 3420046, at *3 (E.D. Pa. Aug. 25, 2010).

With respect to the convenience of the parties, GEICO prefers federal court while the Plaintiffs prefer state court. However, in light of GEICO's failure to proffer any specific reasons why it would be less convenient to assert its counterclaim in the state court action, *see id.*, and Plaintiffs' "'vigorous objection' to the district court's assumption of jurisdiction," *see Reifer*, 751 F.3d at 141 (quoting *Summy*, 234 F.3d at 136), this factor weighs in favor of declining jurisdiction.

As to the public interest in settlement of the uncertainty of obligation, "[t]he public interest will not be better served by the federal court deciding the insurance coverage issue when the state court, which has more familiarity with the underlying cases, can equally well decide the issue." *Antoine*, 2012 WL 707069, at *4. Moreover, because, as discussed *infra* in Section III.B, the case turns on circumstance-specific determinations to be made under relatively undetermined state law, the public interest would be better served by allowing the state court decide these important issues. *See id.* at *5; *see also Ford Motor Co. v. Ins. Com'r of Com. of Pa.*, 874 F.2d 926, 933 n.10 (3d

9

Cir. 1989) (in another context, recognizing "the state's significant interest in the regulation of its insurance industry").

With respect to the availability and relative convenience of other remedies, GEICO may seek declaratory relief in state court under the Pennsylvania Declaratory Judgment Act, 42 Pa. C.S.A. § 7541. *See Hartford Cas. Ins. Co.*, 2010 WL 3420046, at *3 (citing *General Acc. Ins. Co. of Amer. v. Allen*, 692 A.2d 1089, 1092–93 (Pa. 1997) (noting that the purpose of the Pennsylvania Declaratory Judgment Act is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations)). The state court is capable of determining the parties' liabilities and providing adequate remedies, and GEICO "may assert any defenses to [Plaintiffs'] claim in a forum that is no less convenient than this Court." *Stradley, Ranon, Stevens & Young, LLP v. Sovereign Bank, N. Am.*, No. 12-2466, 2013 WL 173022 (E.D. Pa. Jan 15, 2013). Inconvenience to GEICO caused by remand, "if any, would be of its own accord because it could have initially sought declaratory relief in state court, closer to the date when the state case[ ] [was] filed." *Antoine*, 2012 WL 707069, at *4.[6]

Finally, the concerns underlying the fifth, sixth, and eighth factors—a general policy of restraint when the same issues are pending in a state court, avoidance of duplicative litigation, and the inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion—are all inapplicable here due to the absence of pending parallel state proceedings, which itself "militates significantly in favor of

---

[6] The case's timeline in this Court quells any concerns about judicial efficiency. *See* (*Reifer*, 751 F.3d at 149 n.25). GEICO removed the case on July 18, 2017. (ECF No. 1.) Plaintiffs filed their Motion to Remand on July 31, 2017, (ECF No. 4), which the Court now grants less than one month after removal.

10

exercising jurisdiction, although it alone does not require such an exercise." *See Reifer*, 751 F.3d at 145; *see also supra* Part II.  Likewise, with respect to the seventh factor, the absence of parallel state proceedings ameliorates any concern that a federal declaratory action would lead to "a race for *res judicata*."  This factor, however, is also concerned with "preventing the use of the declaratory action as a method of procedural fencing" and the absence of parallel state proceedings does not completely ameliorate the concern that defendants may use federal declaratory actions to engage in forum shopping.  *See Reifer*, 751 F.3d at 143 n.17; *Reifer v. Westport Ins. Co.*, 943 F. Supp. 2d 506, 511 (M.D. Pa. 2013).

**B.**

The Court must also consider whether resolution of the parties' claims depends on issues of novel or unsettled state law, which, under *Summy* and *Reifer*, would favor the Court "stepping back" and permitting them to proceed through the state courts.

Under Pennsylvania law, a notice provision like the one at issue is neither *per se* enforceable to deprive insureds of benefits nor *per se* invalid or unenforceable as against public policy or otherwise.  Rather, the Supreme Court of Pennsylvania has held that "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, [it must] prove that the notice provision was in fact breached *and that the breach resulted in prejudice to its position*." *See Vanderhoff II*, 78 A.3d at 1065–65 (emphasis added).  This requirement applies regardless of whether the notice requirement on which the insurer relies is contractual or statutory.  *See id.*; *see also Brakeman v. Potomac Ins. Co.*, 371 A.2d 193 (Pa. 1977) (establishing requirement that insurers demonstrate prejudice due to insured's failure

11

to comply with contractual notice requirement for phantom vehicle accidents); *Vanderhoff v. Harleysville Ins. Co.*, 997 A.2d 328, 335 (Pa. 2010) ("*Vanderhoff I*") (upholding *Brakeman*'s prejudice requirement notwithstanding the subsequent passage of the MVFRL and the lack of such a requirement in its 30-day notice provision).

According to the Supreme Court of Pennsylvania, "a reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, *e.g.*, being forced to pay a claim against which it has not had an opportunity to defend effectively." *Vanderhoff I*, 997 A.2d at 333 (quoting *Brakeman*, 371 A.2d at 197). Particularly in the context of incidents involving unidentified motorists, such clauses protect the insurer's interest in conducting a timely investigation of claims and acquiring information that might become unattainable or less valuable with the passage of time. *See id.* at 282; *see also Vanderhoff II*, 78 A.3d at 1067 ("Provision of prompt notice to both law enforcement and the insurance company enables those entities to promptly investigate the accident, thus making it less likely a claimant might fabricate a phantom vehicle's involvement to excuse his own neglect. Moreover, it is beyond dispute that, as time passes, memories fade and evidence disappears; therefore, providing prompt notice helps ensure the integrity of the evidence either in support of or discrediting the alleged phantom vehicle's involvement.").

"This is not to say, however, that every case will be affected by notice delay in the same manner or that delay cannot be excused based on the facts of the case." *Vanderhoff II*, 78 A.3d at 1067. Thus, courts require a showing of prejudice because "[w]here the insurance company's interests have not been harmed by a late notice, even

12

in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation." *Id.* (quoting *Brakeman*, 371 A.2d at 197).

Though it is settled that a defendant insurer must demonstrate prejudice in order to deny a claim for uninsured motorist benefits on this basis, Pennsylvania law remains somewhat unsettled as to what constitutes prejudice and how an insurer can show it. The Pennsylvania Supreme Court acknowledged as much in *Vanderhoff II*: "While our case law clearly requires an insurer to show prejudice in such cases, it does not delineate how an insurer proves it was prejudiced or what exactly constitutes prejudice." *Id.* at 1066; *see also Brakeman*, 371 A.2d at 198 ("We recognize that prejudice is a difficult matter to prove affirmatively. . . ."). After acknowledging the unsettled nature of these questions, the *Vanderhoff II* court summarized two Pennsylvania cases dealing with notice and prejudice in the insurance context.

In *Metal Bank of America, Inc. v. Ins. Co. of N. Am.*, 520 A.2d 493 (Pa. Super. Ct. 1987), the Superior Court held that the insurers were prejudiced by the claimant's failure to provide notice of an oil spill until ten years after the spill and two years into the litigation because by that time, the facts were stale, evidence had disappeared and witnesses were either unavailable or had diminished memories. *Id.* at 498. In *Frankford Candy & Chocolate Co., Inc. v. Valiant Ins. Co.*, No. 01534-2004, 2006 WL 224237 (Pa. Com. Pl. Jan. 24, 2006), the insurer denied coverage of a property damage claim filed two years after the failure of roof air conditioning units resulted in damage to the insured's chocolate Easter bunnies. The trial court held the insurer proved it

13

was prejudiced by the late notice in connection with the insured air conditioning units because those units had since been discarded, thereby preventing the insurer from investigating whether their failure was covered under the policy. *Id.* at *3. However, the court found that the insurer was not prejudiced as to the Easter bunnies because a sample of the damaged product remained available for inspection.

After summarizing these cases, the Court concluded that because not every case is affected by delay in the same way and some delays are excusable on the facts of the case, "[t]he determination of prejudice is highly 'circumstance dependent.'" *Vanderhoff II*, 78 A.3d at 1067 (quoting *Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 452 (Pa. 2008)). The Court continued:

> Accordingly, we hold these cases must be addressed on a case-by-case basis wherein the court balances the extent and success of the insurer's investigation with the insured's reasons for the delay. The 30–day notice requirement is there for a reason. It is reasonable that insureds must alert the insurer within a month's time. While an insurer will not be permitted to deny coverage absent prejudice caused by an insured's delay in notice, showing such prejudice does not require proof of what the insurer would have found had timely notice been provided. To demand such evidence would result in a Mobius strip whereby, to show prejudice, the insurer would have to show through concrete evidence the evidence it was unable to uncover due to the untimely notice. While the insurer is always obligated to investigate the case such as it can, where an insured's delay results in an inability to thoroughly investigate the claim and thereby uncover relevant facts, prejudice is established. Handling these cases in this manner promotes prompt notice and advances MVFRL goals while encouraging insurers to investigate phantom vehicle claims.

*Id.* at 1067.

*Vanderhoff II* further discussed what constitutes prejudice in this context and, to a lesser extent, the manner in which an insurer may prove it. However, the essence of its holding was that what might constitute prejudice, and the manner of proving one was prejudiced by an insured's untimely notice, vary significantly depending on the

14

circumstances of the case.[7] Moreover, since the *Vanderhoff II* decision in 2013, there have been few, if any, state court decisions further developing a body of law regarding what rises to the level of prejudice in this context, what is required to prove it in various circumstances and how that calculus should, in turn, be weighed against the insureds' reasons for the delay.[8] Without additional guidance in such a "highly circumstance dependent" context, *see id.*, this Court would, in effect, be filling the gaps in as yet uncertain or undetermined Pennsylvania law. This weighs significantly in favor of declining to exercise jurisdiction. *See Reifer*, 751 F.3d at 148 ("Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction. [T]he state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum. The fact that district courts are limited to predicting—rather than

---

[7] In *Vanderhoff II*, Justice Baer concurred in the result but wrote separately in an effort to "provide specific guidance regarding how an insurance company can demonstrate prejudice resulting from an insured's failure to comply" with a notice requirement, in which he stated, *inter alia*, that he would adopt the insurer's proposed test for prejudice. *See id.* at 1067–69. His guidance and/or reasoning, however, did not command the majority's vote and "carries no precedential weight." *See, e.g.*, *Lebovitz v. Hartford Ins. Co. of the Midwest*, 918 F. Supp. 2d 422, at 427 (E.D. Pa. 2013) (citing *Commonwealth v. Bethea*, 828 A.2d 1066, 1073 (Pa. 2003)).

[8] The Court found just three state court decisions citing *Vanderhoff II*, all for reasons or general propositions irrelevant to the above discussion and none of which engaged in the purported balancing exercise.

15

establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" (quoting *Summy*, 234 F.3d at 133–36)).[9]

## C.

While the absence of parallel state proceedings in this case eliminates several concerns that often counsel in favor of remand and "militates significantly" in favor of exercising jurisdiction, *see Reifer*, 751 F.3d at 145, several of the remaining *Reifer* factors are either neutral or weigh slightly against exercising jurisdiction. *See supra* Section III.A. Moreover, the Court's consideration of the relevant state law, and its resulting concerns over effectively having to create rather than predict or apply state law in an area of particular interest to the state, weigh strongly against exercising jurisdiction. *See supra* Section III.B. The Court is therefore satisfied that the "lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer*, 751 F.3d at 145. In light of this, and with an eye toward "considerations of practicality and wise judicial administration," *id.* at 149 n.25, the Court declines to exercise jurisdiction over this case and grants Plaintiffs' Motion to Remand.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[9] The issue in *Reifer* was better decided in state court in part because it implicated the policies underlying the rules governing attorney conduct, which are promulgated by the Pennsylvania Supreme Court. *See id.* at 149. Though this case does not involve matters "peculiarly within the purview of [the] state's highest court," *see id.*, the state does have a significant interest in regulating its insurance industry, *see Ford Motor Co.*, 874 F.2d at 933 n.10, and equally important to the analysis is the unsettled or undetermined nature of the relevant state law, which weighs against exercising jurisdiction here.

16